SHARP, Judge,
dissenting.
I dissent in this case because I think there were material conflicting factual issues in the record which made the entry of a summary judgment improper. Gordon v. Hotel Seville, 105 So.2d 175 (Fla. 3d DCA 1958). It is well established that a court, faced with a motion for summary judgment, should accept the facts in a light most favorable to the party against whom the motion is made, resolve all conflicts in that party’s favor and derive all reasonable inferences therefrom. Doll v. Robbins, 303 So.2d 338 (Fla.3d DCA 1974); Wills v. Sears Roebuck & Co., 351 So.2d 29 (Fla.1977); Brigbtwell v. Beem, 90 So.2d 320 (Fla.1956).
To do otherwise, as I think occurred in this case, deprives a plaintiff of his right to jury trial.[1] It is understandable that a trial judge, convinced that a plaintiff has a weak case, would try to speed up the judicial process by granting summary judgment. But as long as the people of this State have a constitutional right to trial by jury, it is reversible error for a judge to resolve factual disputes on the basis of sworn affidavits and depositions. Hernandez v. Motrico, Inc., 370 So.2d 836 (Fla.3d DCA 1979); Schmidt v. Bowl America Florida, Inc., 358 So.2d 1385 (Fla. 4th DCA 1978); Ham v. Heintzelman’s Ford, Inc., 256 So.2d 264 (Fla. 4th DCA 1971).
The issue in this case was whether or not the owners of Sam’s Wood Shed Pub and its manager, Murphy, breached their duty to Ross, a customer, in their handling of a dispute which occurred in the Pub concerning payment of a bill. While the manager and the most vocal member of Ross’ party, Horne, were engaged in a physical struggle at the bar, the plaintiff began to rise out of his chair to go to Horne’s aid. He was struck from behind on the head by an unidentified customer with a glass beer mug or pitcher, and he suffered severe injuries.
The case law of Florida imposes on an innkeeper or owner of any public facility the duty of safeguarding, by reasonable means, the physical safety of its customers or patrons. Brightwell v. Beem. It does not matter whether the mechanism causing the injury was an “intervening criminal act” perpetrated by a third person if that act or kind of danger was reasonably foreseeable under the circumstances.[2] In this case, taking the view of the record most favorable to the plaintiff, I think that foreseeability was a jury question.[3]
The plaintiff established, for summary judgment purposes, that three co-workers, Horne, Cappellen, and Ross stopped by Sam’s Wood Shed Pub after work late one afternoon. The plaintiff’s proofs (admittedly contradicted by the defendants’)[4] *230 showed they were not noisy or obnoxious. They had consumed two pitchers of beer during the course of about one hour and had started on a third when the trouble occurred, and they were not intoxicated. The three co-workers paid for their first two pitchers when served, but because they had no more cash with them, they asked the bartender to run a “tab” for the third pitcher. He walked away. A few minutes later Murphy appeared, demanded payment, and ordered them out. They were surprised and did not understand why Murphy asked them to leave. Horne jokingly suggested Murphy arm wrestle Cappellen for the bill. Murphy got angry and refused. Horne went out to his truck and got cash to pay for the beer. Returning, he again tried to get Murphy to arm wrestle for the bill. He tore a twenty dollar ($20.00) bill in half, and said the winner would get both halves. The plaintiff’s depositions showed that Horne was joking and teasing and that they did not ever refuse or intend not to pay for the beer.
How the manager handled this brouhaha with these three customers is the key issue. Who instigated the physical conflict that followed? Did Murphy in effect incite and encourage the other patrons to beat up Ross and his party? The facts and inferences concerning these matters were in conflict at the posture of the summary judgment motion. The plaintiff’s proofs showed that while the joking about arm wrestling was going on, the manager was addressing the other patrons in the Pub, saying there was going to be trouble, and asking if he had any friends among them. The response from the crowd was loud and eager. Patrons nearby were yelling and milling around the plaintiff’s table, and the atmosphere was tense. The three co-workers were afraid.' The plaintiff testified he wanted to pay up and get out of there. The plaintiff’s proofs showed that at that tense moment Murphy initiated a physical attack on Horne with sufficient force to knock him over the bar and through two to three tables. Murphy was a sizeable, heavy man and Horne was much smaller. Horne was unclear as to how many times Murphy struck him in the face with his fists, but when he left the Pub, he had a broken nose, and extensive bruises and cuts on his face requiring stitches. He and Ross both had to be taken to the emergency room at a local hospital. At about the same time Murphy attacked Horne, the unidentified patron struck the plaintiff over the head. Then the crowd in the bar surged forward and shoved the three from the Pub. Horne testified he was also struck by the other patrons in the crowd.
Under these circumstances, I cannot say the over-reaction of the patron in hitting the plaintiff was unforeseeable by the owner and manager. Reading the record in the light most favorable to Ross, Murphy created the tense situation by calling out for help when it was not needed, and he encouraged the participation of other patrons in the altercation, also unnecessarily. Murphy was never in any danger or threatened by the three co-workers, and there was no good reason for him to launch an attack on Horne at the bar. In view of his prior statements, and the reaction of the patrons in the Pub, his attack could well have been taken as an open invitation to the other patrons to enter the fray.
The foreseeability that a customer would be injured in the ensuing brawl, at least partially incited and begun by Murphy (according to the plaintiff’s proofs), was a jury question at least. These facts are distinguishable from Babrab, Inc. d/b/a The Gemini Club, et al. v. Allen, 408 So. 2d 610 (Fla. 4th DCA 1981) and Gottschalk v. Smith, 334 So.2d 102 (Fla.3d DCA 1976), where the management was not involved in the altercation between customers and had no idea one would injure the other. Rather, these facts are closer to Central Theatres, Inc. v. Wilkinson, 18 So.2d 765 (Fla.1944), Sparks v. Ober, 192 So.2d 81 (Fla.3d DCA 1966), Nance v. Ball, 134 So.2d 35 (Fla.2d DCA *231 1961), and Gordon v. Hotel Seville, 105 So.2d 175 (Fla.3d DCA 1958),[5] where the management, although not involved in the boisterous or dangerous conduct of persons on the premises, did nothing to stop it, and knew or should have known such conduct might harm vthe plaintiff. Those courts held summary judgment or directed verdict for the defendant owner was improper. But even closer to the facts in this case is Walker v. Feltman, 111 So.2d 76 (Fla.Bd DCA 1959). The court in Walker reversed the trial court’s order dismissing the complaint where the actions of the owners or employees contributed to or caused the reaction of the crowd of customers who injured the plaintiff. I would reverse the summary judgment.

. Art. I, § 22, Fla.Const.

. Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla.1977); Nicholas v. Miami Burglar Alarm Co., Inc., 339 So.2d 175 (Fla.1976); Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981); Doll v. Robbins, 303 So.2d 338 (Fla.3d DCA 1974); Cooper v. IBI Security Services of Fla., Inc., 281 So.2d 524 (Fla.3d DCA 1973); Sparks v. Ober, 192 So.2d 81 (Fla.3d DCA 1966).

. Vining v. Avis Rent-A-Car Systems, Inc.; Nicholas v. Miami Burglar Alarm Co.; Doll v. Robbins; Homan v. Dade, 248 So.2d 235 (Fla.3d DCA 1971).

. The summary judgment “found” they were noisy, obnoxious, and intoxicated. It also “found”;
3. An altercation developed between the manager, THOMAS MURPHY, and HORNE, when the latter refused to let go of the money he finally tendered. When the tavern manager, THOMAS MURPHY, had subdued HORNE after a brief scuffle, the plaintiff PAT ROSS got up from his chair and according to his testimony ‘probably’ started going to aid Horne [sic],
4. At that point, an unknown patron of the tavern struck the plaintiff, PAT ROSS, in the head with a beer mug, which resulted in his serious injury.
5. The testimony of witnesses showed that as the altercation started to develop, the manager, THOMAS MURPHY, stated that he wanted no trouble, that trouble was about to develop, and wanted to know if he had any friends among the patrons who would be willing to help him if trouble occurred.
*230 If those were the undisputed facts, I would probably agree with the summary judgment. However, the plaintiffs proofs contradict almost every “finding.”

. See also A Trysting Place, Inc. v. Kelly, 245 So.2d 875 (Fla. 3d DCA 1971).