428 So.2d 268 (1982)
C. Wayne SPILLERS, Appellant,
v.
Eugene HALL, Appellee, and
BILLY JACK'S, INC., Appellant,
v.
Eugene HALL, Appellee.
Nos. 82-395, 82-405.
District Court of Appeal of Florida, Second District.
November 17, 1982.
Rehearing Denied January 3, 1983.
*269 Lee S. Damsker, of Maney & Damsker and James W. Clark of Peavyhouse, Giglio, Grant, Clark, Charlton & Opp, Tampa, for appellant C. Wayne Spillers.
Kathleen V. McCarthy, Hialeah, for appellant Billy Jack's, Inc.
D. Russell Stahl, Tampa, for appellee.
BOARDMAN, Judge.
Defendants C. Wayne Spillers and Billy Jack's, Inc. appeal a final judgment awarding appellee/plaintiff Eugene Hall $240,000 against them jointly and $6672.84 against Spillers only. We affirm as to Spillers, but reverse as to Billy Jack's.
Appellee brought this lawsuit for damages arising out of his assault and battery by Spillers on November 9, 1978, at Billy Jack's Lounge and a subsequent assault and battery by Spillers at a different location. Appellee sought damages against Billy Jack's for the first incident on a negligence theory. The jury found in favor of appellee and against appellants on all issues.
The facts pertinent to the liability vel non of Billy Jack's are as follows:
Appellee testified that on November 9, 1978, he was in Billy Jack's Lounge. He had seen Spillers and a man known as Kuz together at the bar many times, and both were present that night. Appellee had had a few beers and was watching a friend shoot pool when Kuz tried to hit appellee. Appellee pushed Kuz out the front door and engaged in a fist fight with him on the steps. When appellee stood up and turned to walk away, he found himself face to face with Spillers and George McGuire, the bar manager. Spillers was about to hit appellee with a pool cue. Appellee bent over to avoid being hit in the head, but the cue hit him on the back of the head, severely injuring him. Billy Jack's had a policy against the removal of pool cues from the premises.
Spillers testified that he was in the bar on November 9, 1978, because he was interested in purchasing it, and he and his mother did purchase the bar in March, 1979. Spillers had not been in any serious fights as an adult except on the two occasions with appellee. Spillers can't walk without a cane because of a hip operation he had in 1975 or 1976. He needs a cane to take weight off his right hip. McGuire broke up the fight inside the bar between appellee and Kuz by grabbing appellee, picking him up, forcing him out the door, and telling both him and Kuz to leave. Kuz grabbed Spillers' cane and followed appellee and McGuire outside. Spillers asked his girlfriend, Shirlene Voorhes, to go out and get his cane back. When she had been gone for a while, Spillers became concerned, so he took a pool cue to support himself and went outside. Outside, Spillers saw McGuire holding Kuz and Voorhes standing, having just retrieved his cane from Kuz. She gave Spillers his cane. Spillers was going back into the bar when appellee jumped in front of him and threatened to hurt him worse than he had ever before been hurt in his life, and Spillers immediately struck appellee with the pool cue in self-defense.
Voorhes testified that she was a Billy Jack's employee. She was not working on the night in question, but was present as a customer. Kuz grabbed Spillers' cane from him just before Kuz went outside with appellee. Spillers sent her out to retrieve his cane from Kuz. Voorhes knew Spillers wanted his cane "because he can't walk without it... . I tried to get the cane from him and Kuz wouldn't give it to me and finally he gave it to me, because Wayne came out with a pool stick." It took her five to ten minutes to get the cane, and the total time between the point when she left the bar to retrieve the cane and when Spillers hit appellee was "a good twenty or thirty minutes." During that time McGuire was standing outside with Kuz.
Peg Moreland, appellee's girlfriend, testified that she had seen Spillers dancing in Billy Jack's without his cane.
A friend of Spillers, Casey Gonzalez, who witnessed the second assault, testified that he had seldom seen Spillers without his *270 cane, but that as the fight began "he dropped it and started kind of running toward" appellee.
The owner of a tavern has a duty to maintain the tavern in a reasonably safe condition, free from those risks which are known, or through the exercise of reasonable care should be known, to the owner. Babrab, Inc. v. Allen, 408 So.2d 610 (Fla. 4th DCA 1981); Worth v. Stahl, 388 So.2d 340 (Fla. 4th DCA 1980). Here, however, there is no evidence to support a finding that Billy Jack's knew or should have known that Spillers would attack appellee without provocation. As stated in Highlands Insurance Co. v. Gilday, 398 So.2d 834, 835 (Fla. 4th DCA 1981, cert. denied, 411 So.2d 382 (Fla. 1981):
The owner or operator of a hotel has a duty to exercise reasonable care for the protection of its patrons. However, such owner or operator is not an insurer of the safety of its patrons. Nor is the owner or operator liable for the conduct of another on his premises which causes injury to a business invitee unless the owner or operator has notice of the danger involved and an opportunity to protect against it.
(Citations omitted).
Babrab, relying on Gilday, reversed the denial of the tavern's motion for directed verdict because:
There is no evidence whatever in the record that the attacker had ever before created a disturbance at or near this bar. Even on the evening in question, there was no suggestion of anticipated violence. The victim admitted that the attacker had made no threatening remarks prior to the attack on her which occurred, as she admitted, totally unexpectedly after she had departed the bar and was out in the parking lot en route to her automobile.
408 So.2d at 611. It was uncontroverted that Spillers had never been involved in a fight in his life, except the two altercations with appellee, and there was no evidence that Spillers had ever before created a disturbance at or near Billy Jack's. Even on the evening of the first incident there was no suggestion of anticipated violence between Spillers and appellee, according to appellee's version of events. "[T]he owner of a public place is not liable in damages to one who is injured by the unforeseen, violent acts of another." Worth, supra, at 341.
Appellee argues that since Spillers and Kuz had been seen drinking together many times at Billy Jack's, it could be inferred that when appellee got involved in a fist fight with Kuz, Spillers intended, when he left the bar, to assist Kuz. Appellee further asserts that the only logical inference from Spillers' action in removing the pool cue from the bar was that he intended to use it against appellee.
Both of appellee's arguments are specious. The mere fact that Spillers and Kuz were friends, assuming that the owner or one or more employees of Billy Jack's was aware of this fact, would not ineluctably lead a reasonable person to the conclusion that Spillers left the bar to assist his friend, particularly where the bar manager was known to Spillers to be outside with the combatants and where Spillers did not go outside for at least twenty minutes after McGuire, Kuz, and appellee had left. Moreover, it is clear that Spillers was using the pool cue for support in walking and that he regularly used a cane. Even assuming he was occasionally able to walk without a cane, McGuire could hardly be expected to predict that Spillers would use the pool cue as a weapon when he came out leaning on it as if it were a cane. Contrary to appellee's version of the facts, there is no evidence to support even an inference that Spillers brandished the pool cue menacingly or otherwise threatened appellee before taking the swing at him that produced his injuries.
The cases relied on by appellee, Sparks v. Ober, 192 So.2d 81 (Fla. 3d DCA 1966), and Central Theatres, Inc. v. Wilkinson, 154 Fla. 589, 18 So.2d 755 (Fla. 1944), are highly dissimilar factually to the instant case. In both of those cases an agent of the defendant allegedly had knowledge of the danger in sufficient time to have prevented the plaintiff's injuries.
*271 Accordingly, we hold that Billy Jack's was not shown to have breached its duty to appellee. However, we find no merit to the point on appeal raised by Spillers.
We therefore affirm the final judgment as to Spillers, but reverse it as to Billy Jack's and remand for entry of a corrected final judgment discharging Billy Jack's from liability.
HOBSON, A.C.J., and SCHEB, J., concur.